UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

RONALD JORDAN #125764,           )
                                 )
            Plaintiff,           )    Case No. 2:07-cv-177
                                 )
v.                               )    Honorable Robert Holmes Bell
                                 )
STEVEN NIEMI, et al.,            )
                                 )
            Defendants.          )
_____)

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Resident Unit Manager Steven Niemi, Mail Room Employee Vicki Nomellini, and Case Manager Michael Laitinen. The Court will serve the complaint against Defendants Supervisor of Library Services Kathy Kero, and Assistant Deputy Warden James Alexander.

**Discussion**

    I.    Factual allegations

Plaintiff Ronald Jordan #125764, an inmate at the Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Resident Unit Manager Steven Niemi, Mail Room Employee Vicki Nomellini, Case Manager Michael Laitinen, Supervisor of Library Services Kathy Kero, and Assistant Deputy Warden James Alexander. Plaintiff alleges in his complaint that on September 23, 2004, Defendant Nomellini intercepted a letter addressed to Plaintiff and issued a notice of mail rejection. The mail rejection falsely asserted that the letter was a legal document from another prisoner. Plaintiff demanded a hearing. On September 30, 2004, Defendant Nomellini again rejected a three page letter sent to Plaintiff by another prisoner. The notice stated: "You have received: . . . mail containing the following: ONE THREE PAGE LETTER NOT ALLOWED. NO LEGAL AGREEMENT."

On October 11, 2004, Defendant Niemi conducted a hearing and upheld the rejections, stating that there was no legal agreement between Plaintiff and the sender. Plaintiff claims that the letter at issue was not a legal document, but merely correspondence, which does not require a legal agreement. Plaintiff contends that Defendant Niemi verbally agreed that the September 23, 2004, letter was not a legal document, but upheld the rejection. In addition, Defendant Niemi noted that the September 30, 2004, letter was properly rejected because it solicited legal advice. In his decision, Defendant Niemi stated:

> Items including an "application for leave to appeal" will not be given to prisoner Jordan as they are legal documents belonging to prisoner Lightningbolt, and there is no existing legal agreement between the two prisoners, therefore, meeting the definition of contraband according to P.D. 04.07.112, "Prisoner Personal Property." Also, there is an included section in the paperwork in which Lightningbolt

> clearly solicits legal advice from prisoner Jordan in the form of several questions regarding pending litigation of Lightningbolt. An administrative hearing conducted 10/24/86 cancelled all of Jordan's existing legal agreements and restricted him to work only on his own litigation, therefore, Jordan has no right to possession of rejected documents, nor the right to assist Lightninbolt with his pending litigation. The rejected correspondence in question clearly represents an attempt by the two prisoners to circumvent said hearing regarding Jordan being prohibited from provided legal assistance.

(*See* Plaintiff's complaint, ¶ 11, fn 2.)

Plaintiff alleges that on October 6, 2004, he was issued a notice of intent to conduct a hearing on whether to charge him $8.40 in postage. On November 5, 2004, a hearing was conducted for the following reasons:

> A hearing was conducted on 10-4-04 requiring [Plaintiff] to pay postage expenses to return confiscated materials to their original owners. At the time of the hearing, the postage expenses were unknown. This NOI is to confirm the exact costs of postage payable by [Plaintiff] per hearing report. . . . Three envelopes of confiscated materials will be mailed back to their original owners. The total amount of postage is $8.40. The copies of individual mailers with metered postage is attached.

(*See* Plaintiff's complaint, ¶ 17, fn 8.) Following the hearing, Plaintiff was charged postage. In the reasons for the finding, Defendant Laitinen stated:

> Postage in the amount of $8.40 will be charged to [Plaintiff's] account if he is without funds, a postage debt will be established. On 09/24/04 Jordan was found guilty of a (020) Disobeying a Direct Order misconduct, due to his assisting other prisoners with their legal work, in direct violation of an administrative hearing which prohibits Jordan from such assistance. As a direct result of this guilty finding, hearings division determined the materials in question were to be returned to their rightful owners at Jordan's expense. Postage costs has been determined to be $8.40 and Jordan is responsible for this charge.

(*See* Plaintiff's complaint, ¶ 18, fn 9.)

Plaintiff alleges that on November 19, 2004, Defendant Nomellini again rejected mail addressed to Plaintiff which contained two prisoner misconduct documents and a memo from the MDOC Hearing Administrator. The sender was never notified of the rejection and Plaintiff demanded a hearing. Plaintiff claims that the documents were major misconduct appeals in which the sender had prevailed, and which had been furnished to Plaintiff for use as exhibits in a similar matter. Plaintiff claims that such material is not prohibited by the mail policy. On December 2, 2004, Defendant Laitinen conducted a hearing on the mail rejection. Defendant Laitinen arbitrarily upheld the mail rejection, finding that the documents were personal property of the sender and that the sender was seeking legal assistance from Plaintiff.

On November 22, 2004, Plaintiff asked Defendant Kero for extra law library time so that he could meet a court-imposed filing deadline. Plaintiff also requested weekend in cell use of law books because he could not attend daytime law library sessions due to his work assignment. Defendant Kero issued a memorandum granting Plaintiff extra law library time, but verbally denied the request for weekend in-cell use of books. Plaintiff, an African American, told Defendant Kero that Caucasion Prisoner Jami Naturalite had been allowed in-cell use of 10 books and that Plaintiff expected to receive the same treatment. Defendant Kero referred Plaintiff to Defendant Alexander, stating that Defendant Alexander had authorized in-cell use of books for Caucasion prisoners. Defendant Alexander acknowledged approving weekend in-cell law books for Caucasion prisoners, but saw no reason to do the same for Plaintiff. When Plaintiff suggested that this was racially motivated, Defendant Alexander told Plaintiff to "take it any way" he wished.

On January 12, 2005, Plaintiff was issued a minor misconduct report, charging him with possession of contraband for a cloth carrying case used for years to transport legal files.

Plaintiff states that he had used the case on a daily basis since 1997 and that it was examined by a prison staff person, William Jarvis, in 1998, after which Plaintiff was allowed to possess it. On January 20, 2005, Defendant Laitinen conducted a hearing on the contraband charge and verbally acknowledged that he and other staff had knowingly permitted Plaintiff to possess the carrying case for many years. Nonetheless, Defendant Laitinen arbitrarily found Plaintiff guilty and imposed a 10 day sanction, under which Plaintiff was deprived of personal property, recreation, yard, commissary, library, gymnasium, and loss of the carrying case.

On February 24, 2005, Defendant Nomellini again rejected mail addressed to Plaintiff, containing a letter from a former MDOC inmate, a Friend of the Court report, and a financial statement, because the documents contained the sender's social security number. The sender was not notified of the rejection and Plaintiff demanded a hearing. On March 3, 2005, Defendant Laitinen conducted a hearing on the rejection notice, at which time Plaintiff provided a typed defense statement point out that no prison rule or policy prohibits mail containing a social security number, and that it was arbitrarily unreasonable to speculate that Plaintiff could commit a criminal act with the number. Nonetheless, Defendant Laitinen upheld the mail rejection.

On April 20, 2005, Defendant Nomellini intercepted a magazine sent to Plaintiff as a free sample on the pretext that there was a balance due. The letter accompanying the magazine stated that if Plaintiff was not satisfied with the magazine, he could simply write "cancel" on the invoice and return it and owe nothing. Plaintiff demanded a hearing. On April 22, 2005, Defendant Niemi conducted a hearing on the rejection, stating that even if Plaintiff did not owe anything, he was still not going to get the magazine. In the hearing record, Defendant Niemi concluded that the magazine had been sent on a "credit basis" and upheld the rejection.

On May 2, 2005, Plaintiff was issued a mail rejection for portions of a handwritten letter from another prisoner because the letter was determined to be "legal paper work for Prisoner Couch." On May 12, 2005, Defendant Niemi conducted a hearing and arbitrarily upheld the rejection based on the purely speculative conclusion that the sender intended to have Plaintiff prepare the letter into some unspecified legal document. On October 5, 2005, Defendant Nomellini issued a mail rejection notice for a photocopy of a prisoner yard pass "above a typed statement by the sender declaring conversion from Islam to Christianity." Defendant Niemi conducted a hearing on October 27, 2005, during which Plaintiff produced an identical copy of the rejected page that he had received on October 7, 2005 in a separate envelope. Defendant Niemi allowed Plaintiff to keep the copy, but upheld the October 5, 2005 mail rejection.

Plaintiff claims that Defendants' conduct violated his rights under the First and Fourteenth Amendments. Plaintiff seeks compensatory, punitive and exemplary damages.

II.     Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants' conduct regarding his mail violates his right to freedom of association. The court notes that the Sixth Circuit has not decided the degree to which prison inmates retain their freedom of association. *Long v. Norris*, 929 F.2d 1111, 1118 (6th Cir.), *cert. denied*, 502 U.S. 863 (1991). However, other courts have held that an inmate's right to mail letters to his family or friends is not absolute, and that a prisoner has no more right to free postal service than does the ordinary citizen. *Corby v. Conboy*, 457 F.2d 251, 254 (2d Cir. 1972); *Williams v. Ward*, 404 F. Supp. 170, 172 (S.D. N.Y. 1975); *Chiarello v. Bohlinger*, 391 F. Supp. 1153, 1154 (S.D. N.Y. 1975), *aff'd*, 573 F.2d 1288 (1978). Any First Amendment rights retained by prisoners upon incarceration must yield to "the legitimate penological objectives of the corrections system," such as order, security, or rehabilitation. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Bazzetta v. McGinnis*, 124 F.3d 774, 780 (6th Cir. 1997), *cert. denied*, 524 U.S. 953 (1998). As noted above, Plaintiff claims that various items of mail were rejected because they were legal documents belonging to other prisoners with whom Plaintiff did not have a legal agreement. Defendant Nomellini rejected mail from a former prisoner because it contained his social security number, which could have posed a danger as Plaintiff could have used this number to defraud the sender or others. Finally, Defendant Nomellini rejected a magazine because there was a "balance due" unless the subscription was promptly cancelled. The court concludes that there is a valid, rational connection between preventing Plaintiff from receiving the above items and the safety and good order of institutional operations, as well as the security of third persons. *Turner*, 482 U.S. at 90. Therefore, any limited right of freedom of association Plaintiff might retain while incarcerated is not violated by Defendants' conduct. Consequently, Plaintiff's freedom of association claims are properly dismissed.

Plaintiff also claims that Defendants' conduct violated his due process rights. However, Plaintiff's complaint, as well as the attached documents, establish that if Plaintiff had a right implicating the due process protections of the Constitution, Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. *Zinermon v. Burch*, 494 U.S. 113, 127-28, 110 S. Ct. 975, 984 (1990). The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9, 100 S. Ct. 553, 558, n. 9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon*, 494 U.S. at 125, 110 S. Ct. at 983 (1990) (emphasis in original). As noted above, Plaintiff received hearings for each of the mail rejections and had the opportunity to present arguments in his own favor. Therefore, Plaintiff's due process claims are properly dismissed.

Finally, Plaintiff claims that Defendants Kero and Alexander violated his equal protection rights when they denied his request for in-cell use of law books, but granted similar requests to Caucasion prisoners. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S.

CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. As noted above, Plaintiff is African American and claims that he was treated differently than Caucasion prisoners. Such allegations state a claim under the Equal Protection Clause of the Fourteenth Amendment. Therefore, Plaintiff's equal protection claims against Defendants Kero and Alexander may not be dismissed at this time.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Steven Niemi, Vicki Nomellini, and Michael Laitinen will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Kathy Kero and James Alexander.

In addition, Plaintiff's motions for an advisory opinion and for service will be denied as moot.

An Order consistent with this Opinion will be entered.


Date:     April 16, 2008                    /s/ Robert Holmes Bell
                                            ROBERT HOLMES BELL
                                            CHIEF UNITED STATES DISTRICT JUDGE