UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RONALD JORDAN,

    Plaintiff,

v.                                              Case No. 2:07-cv-177
                                              HON. ROBERT HOLMES BELL

STEVEN NIEMI, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Ronald Jordan, an inmate at the Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Resident Unit Manager Steven Niemi, Mail Room Employee Vicki Nomellini, Case Manager Michael Laitinen, Supervisor of Library Services Kathy Kero, and Assistant Deputy Warden James Alexander. Plaintiff alleges in his complaint that on September 23, 2004, Defendant Nomellini intercepted a letter addressed to Plaintiff and issued a notice of mail rejection. The mail rejection falsely asserted that the letter was a legal document from another prisoner. Plaintiff demanded a hearing. On September 30, 2004, Defendant Nomellini again rejected a three page letter sent to Plaintiff by another prisoner. The notice stated, "You have received: . . . mail containing the following: ONE THREE PAGE LETTER NOT ALLOWED. NO LEGAL AGREEMENT."

On October 11, 2004, Defendant Niemi conducted a hearing and upheld the rejections, stating that there was no legal agreement between Plaintiff and the sender. Plaintiff claims that the letter at issue was not a legal document, but merely correspondence, which does not

require a legal agreement. Plaintiff contends that Defendant Niemi verbally agreed that the September 23, 2004 letter was not a legal document, but upheld the rejection. In addition, Defendant Niemi noted that the September 30, 2004 letter was properly rejected because it solicited legal advice. In his decision, Defendant Niemi stated:

> Items including an "application for leave to appeal" will not be given to prisoner Jordan as they are legal documents belonging to prisoner Lightningbolt, and there is no existing legal agreement between the two prisoners, therefore, meeting the definition of contraband according to P.D. 04.07.112, "Prisoner Personal Property." Also, there is an included section in the paperwork in which Lightningbolt clearly solicits legal advice from prisoner Jordan in the form of several questions regarding pending litigation of Lightningbolt. An administrative hearing conducted 10/24/86 cancelled all of Jordan's existing legal agreements and restricted him to work only on his own litigation, therefore, Jordan has no right to possession of rejected documents, nor the right to assist Lightningbolt with his pending litigation. The rejected correspondence in question clearly represents an attempt by the two prisoners to circumvent said hearing regarding Jordan being prohibited from provided legal assistance.

(*See* Plaintiff's complaint, ¶ 11, fn 2.)

Plaintiff alleges that on October 6, 2004, he was issued a notice of intent to conduct a hearing on whether to charge him $8.40 in postage. On November 5, 2004, a hearing was conducted for the following reasons:

> A hearing was conducted on 10-4-04 requiring [Plaintiff] to pay postage expenses to return confiscated materials to their original owners. At the time of the hearing, the postage expenses were unknown. This NOI is to confirm the exact costs of postage payable by [Plaintiff] per hearing report. . . . Three envelopes of confiscated materials will be mailed back to their original owners. The total amount of postage is $8.40. The copies of individual mailers with metered postage is attached.

(*See* Plaintiff's complaint, ¶ 17, fn 8.) Following the hearing, Plaintiff was charged postage. In the reasons for the finding, Defendant Laitinen stated:

> Postage in the amount of $8.40 will be charged to [Plaintiff's] account if he is without funds, a postage debt will be established. On 09/24/04 Jordan was found guilty of a (020) Disobeying a Direct Order misconduct, due to his assisting other prisoners with their legal work, in direct violation of an administrative hearing which prohibits Jordan from such assistance. As a direct result of this guilty finding, hearings division determined the materials in question were to be returned to their rightful owners at Jordan's expense. Postage costs has been determined to be $8.40 and Jordan is responsible for this charge.

(*See* Plaintiff's complaint, ¶ 18, fn 9.)

Plaintiff alleges that on November 19, 2004, Defendant Nomellini again rejected mail addressed to Plaintiff which contained two prisoner misconduct documents and a memo from the MDOC Hearing Administrator. The sender was never notified of the rejection and Plaintiff demanded a hearing. Plaintiff claims that the documents were major misconduct appeals in which the sender had prevailed, and which had been furnished to Plaintiff for use as exhibits in a similar matter. Plaintiff claims that such material is not prohibited by the mail policy. On December 2, 2004, Defendant Laitinen conducted a hearing on the mail rejection. Defendant Laitinen arbitrarily upheld the mail rejection, finding that the documents were personal property of the sender and that the sender was seeking legal assistance from Plaintiff.

On November 22, 2004, Plaintiff asked Defendant Kero for extra law library time so that he could meet a court-imposed filing deadline. Plaintiff also requested weekend in-cell use of law books because he could not attend daytime law library sessions due to his work assignment. Defendant Kero issued a memorandum granting Plaintiff extra law library time, but verbally denied the request for weekend in-cell use of books. Plaintiff, an African American, told Defendant Kero that Caucasian Prisoner Jami Naturalite had been allowed in-cell use of 10 books and that Plaintiff expected to receive the same treatment. Defendant Kero referred Plaintiff to Defendant Alexander,

stating that Defendant Alexander had authorized in-cell use of books for Caucasian prisoners. Defendant Alexander acknowledged approving weekend in-cell law books for Caucasian prisoners, but saw no reason to do the same for Plaintiff. When Plaintiff suggested that this was racially motivated, Defendant Alexander told Plaintiff to "take it any way" he wished.

On January 12, 2005, Plaintiff was issued a minor misconduct report, charging him with possession of contraband for a cloth carrying case used for years to transport legal files. Plaintiff states that he had used the case on a daily basis since 1997 and that it was examined by a prison staff person, William Jarvis, in 1998, after which Plaintiff was allowed to possess it. On January 20, 2005, Defendant Laitinen conducted a hearing on the contraband charge and verbally acknowledged that he and other staff had knowingly permitted Plaintiff to possess the carrying case for many years. Nonetheless, Defendant Laitinen arbitrarily found Plaintiff guilty and imposed a 10 day sanction, under which Plaintiff was deprived of personal property, recreation, yard, commissary, library, gymnasium, and loss of the carrying case.

On February 24, 2005, Defendant Nomellini again rejected mail addressed to Plaintiff, containing a letter from a former MDOC inmate, a Friend of the Court report, and a financial statement, because the documents contained the sender's social security number. The sender was not notified of the rejection and Plaintiff demanded a hearing. On March 3, 2005, Defendant Laitinen conducted a hearing on the rejection notice, at which time Plaintiff provided a typed defense statement pointing out that no prison rule or policy prohibits mail containing a social security number, and that it was arbitrarily unreasonable to speculate that Plaintiff could commit a criminal act with the number. Nonetheless, Defendant Laitinen upheld the mail rejection.

On April 20, 2005, Defendant Nomellini intercepted a magazine sent to Plaintiff as a free sample on the pretext that there was a balance due. The letter accompanying the magazine

stated that if Plaintiff was not satisfied with the magazine, he could simply write "cancel" on the invoice and return it and owe nothing. Plaintiff demanded a hearing. On April 22, 2005, Defendant Niemi conducted a hearing on the rejection, stating that even if Plaintiff did not owe anything, he was still not going to get the magazine. In the hearing record, Defendant Niemi concluded that the magazine had been sent on a "credit basis" and upheld the rejection.

On May 2, 2005, Plaintiff was issued a mail rejection for portions of a handwritten letter from another prisoner because the letter was determined to be "legal paper work for Prisoner Couch." On May 12, 2005, Defendant Niemi conducted a hearing and arbitrarily upheld the rejection based on the purely speculative conclusion that the sender intended to have Plaintiff prepare the letter into some unspecified legal document. On October 5, 2005, Defendant Nomellini issued a mail rejection notice for a photocopy of a prisoner yard pass "above a typed statement by the sender declaring conversion from Islam to Christianity." Defendant Niemi conducted a hearing on October 27, 2005, during which Plaintiff produced an identical copy of the rejected page that he had received on October 7, 2005 in a separate envelope. Defendant Niemi allowed Plaintiff to keep the copy, but upheld the October 5, 2005 mail rejection.

On April 16, 2008, the court dismissed Plaintiff's claims against Defendants Niemi, Nomellini, and Laitinen with prejudice. (Docket #8 and #9.) Consequently, Plaintiff's only remaining claims are his Fourteenth Amendment equal protection claims against Defendants Kero and Alexander. Plaintiff seeks compensatory, punitive and exemplary damages.

Presently before the Court is the Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56, filed by Defendants Kero and Alexander. Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

    As noted above, Plaintiff claims that Defendants Kero and Alexander violated his equal protection rights. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny"

standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.

Plaintiff, who is African American, claims that he requested extra library time and in-cell use of books on November 22, 2004, for a December 15, 2004, court deadline, and that this request was denied by Defendants. Plaintiff contends that during the same time period, a Caucasion prisoner, Jami Naturalite, was permitted to have books in his cell on the weekends. Plaintiff claims that the difference in treatment between himself and inmate Naturalite was the result of a desire to discriminate against him on the basis of his race.

In support of their motion for summary judgment, Defendants offer the affidavit of Defendant Kero, in which she attests that during the relevant time period, there were three library sessions that prisoners could attend: 8:30-10:30 a.m.; 1:30-3:30 p.m., and 5:00-8:00 p.m. Defendant Kero states that Plaintiff did request extra law library time on November 22, 2004, relating to a December 15, 2004, deadline. Defendant Kero granted his request. Defendant Kero also received a message from Defendant Alexander indicating that if Plaintiff came to all four evening law library sessions, then he would be allowed to receive in-cell books on the weekend. (Defendants' Exhibit B, Kero Affidavit, ¶¶ 4-5.)

Defendants also attach a copy of the book check-out memorandums for the pertinent time period, which show that on two occasions, books requested by Plaintiff were not available. These occasions were on November 22, 2004, and December 15, 2004. This constitutes six out of approximately ninety-six books requested by Plaintiff. Defendant Kero attests that she told Plaintiff to let her know which books he wanted and that she would reserve them. (Defendants' Exhibit B, Kero Affidavit, ¶ 6, Book Check-Out Memoranda.)

Defendant Kero attests that Plaintiff's library attendance during this time was as follows: 11-22-04 (M): 1700-2000; 11-23-04 (T): 1700-2000; 11-24-04 (W): 1700-2000; 11-25-04 (Th): none; 11-29-04 (M): 1700-2000; 11-30-04 (T): none; 12-1-04 (W): 1700-2000; 12-2-04 (Th): 1700-2000; 12-6-04 (M): 1700-2000; 12-7-04 (T): 1700-2000; 12-8-04 (W): 1700-2000 (left early); 12-9-04 (Th): none; 12-13-04 (M): 1700-2000; 12-14-04 (T): 1700-2000; 12-15-04 (W): 1700-2000 (court deadline; end of in-cell book approval). (Defendants' Exhibit B, Kero Affidavit, ¶ 7.)

Defendant Kero attests that because Plaintiff did not use all of his library time and did not show up to all four available library sessions during the three weeks in question, he was not allowed access to in-cell books on weekends. In addition, Defendant Kero attests that inmate Naturalite received books in-cell because of his job assignment as a porter. Inmate Naturalite's work detail was from 2:00 to 9:00 p.m., Monday through Friday. The only law library session available for inmate Naturalite to attend was the morning session from 8:30 to 10:30 a.m., which conflicted with yard time. Pursuant to prison policy, only one-third of the minimum six hours per week of law library time may be scheduled during a prisoner's yard time. When inmate Naturalite was scheduled during his yard time, he frequently had to call his attorney, so he would have to leave early and not receive at least two hours of research time. Defendant Kero states that she and Defendant Alexander decided to allow prisoner Naturalite to receive books in his cell to accommodate his special situation. Because Plaintiff did not have the same work / time constraints as inmate Naturalite, he was not treated in the same manner. (Defendants' Exhibit B, Kero Affidavit, ¶¶ 8-10.)

Defendants have also offered the affidavit of Defendant Alexander, in which he attests that Plaintiff was approved for extra library time beginning on November 22, 2004, and continuing through December 15, 2004. Plaintiff's work schedule during that time period was from 7:00 a.m. to 3:00 p.m., which prevented Plaintiff from attending the morning and afternoon library

- 8 -

sessions. Therefore, Plaintiff was approved to attend all four evening library sessions, for a total of 12 hours each week. Defendant Alexander attests that he agreed to allow Plaintiff in-cell books on the weekends if he attended all four evening library sessions. Plaintiff did not attend all four sessions during any of the above weeks. (Defendants' Exhibit C, Alexander Affidavit, ¶¶ 3-4.)

Defendant Alexander states that prisoner Naturalite was provided in-cell books on the weekends because of his work schedule. During that time period at issue, Prisoner Naturalite was working in a high security assignment with specific security criteria that could not be met by other prisoners, so that he was meeting an institutional need. In addition, prisoner Naturalite specifically agreed to work instead of attending law library sessions so long as he could receive books on the weekend. (Defendants' Exhibit C, Alexander Affidavit, ¶ 5.)

In response to the motion for summary judgment, Plaintiff offers his own affidavit stating that he observed prisoner Naturalite directly access the law library on 60 or more occasions, usually 4 times a week, in addition to receiving in-cell books on Monday, Wednesday and weekends. Plaintiff asserts that this type of access was not afforded to African American prisoners. (Plaintiff's affidavit, ¶ 13.) Plaintiff also attests that he submitted a written request form for law library 4 times a week, but that he was never scheduled for law library on Thursday. (Plaintiff's affidavit, ¶ 8.) However, a review of the attachments to Plaintiff's complaint show that he was given a memo dated November 22, 2004, indicating that he had been approved for extra law library time and instructing him to sign up for the first six hours each week by placing the law library research session request form in the drop box. Plaintiff was further instructed that extra time request slips would be accepted, but that Plaintiff would not be automatically scheduled for the extra time session and was notified that availability of extra time sessions is dependant upon prisoner demand and the failure to attend a scheduled law library session could result in forfeiture of the extra time. In a handwritten note

dated December 7, at the bottom of the memo, Defendant Kero noted that she had verbally explained to Plaintiff that he could attend law library four evenings a week and that if he came to all four sessions, he could get books on the weekend. (Defendants' Exhibit C, November 22, 2004, memo from Defendant Kero.)

Plaintiff also attaches a copy of the step I and II responses to his January 23, 2004, grievance regarding the denial of in-cell books. According to the responses, as long as Plaintiff requested and utilized the four law library sessions, he would be eligible to receive up to 10 law books for use on the weekends. The step II response notes that Plaintiff failed to present any supporting information showing that this policy had not been adhered to. In Plaintiff's step III grievance, he states: "This grievance is only about racial discrimination - not law library access. Step I and II fail to address the issue of racial discrimination." (Grievance Form for MBP 04-11-2698-140A.)

Plaintiff fails to show that he properly requested a fourth law library session each week. As noted above, Plaintiff needed to request this accommodation separately each week. It appears that if Plaintiff had attended all four sessions each week, he would have been able to receive in-cell books on the weekends, similar to prisoner Naturalite. Moreover, for the reasons set forth in the Defendants' affidavits, prisoner Naturalite was not similarly situated to Plaintiff. Prisoner Naturalite did not work the same schedule as Plaintiff and was working in a job with specific criteria, that could not be met by any other prisoners. Consequently, prisoner Naturalite was given special treatment on that basis, rather than because of any attempt to discriminate on the basis of race. Therefore, the undersigned recommends that Defendants Kero and Alexander be granted summary judgment.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's motion for summary judgment. Accordingly, it is recommended that Defendant's Motion for Summary Judgment (Docket #25) be granted and this case be dismissed in its entirety.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: May 28, 2009