UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RONALD JORDAN,

        Plaintiff,

v.

Case No. 2:07-cv-177

HON. ROBERT HOLMES BELL

STEVEN NIEMI, et al.,

        Defendants.
_____/

## MEMORANDUM OPINION AND ORDER

On May 28, 2009, Magistrate Judge Timothy P. Greeley issued a report and recommendation ("R & R") recommending that Defendants' motion for summary judgment be granted and that this case be dismissed in its entirety. (Dkt. No. 38.) The R & R was duly served on the parties. Plaintiff filed objections to the R & R on June 8, 2009. (Dkt. No. 39.)

This Court is required to make a de novo determination of those portions of the R & R to which objection has been made, and may accept, reject, or modify any or all of the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Plaintiff's § 1983 action alleges that Defendants discriminated against him on the basis of race by failing to allow him to use materials from the prison law library in his cell. Plaintiff is an inmate at the Alger correctional facility in Munising, Michigan. Prison policy requires that each prisoner be given access to the facility's law library for a minimum of six

hours every week in time increments no shorter than two hours each. (Dkt. No. 26, Def.'s Mot. Ex. A.) Prison policy also requires that no more than one-third of a prisoner's library time conflict with the prisoner's yard time. (*Id.*) During the relevant time period, prisoners could access the library from Monday through Thursday from 8:30-10:30 a.m., 1:30-3:30 p.m., and 5:00-8:00 p.m, although during the evening time slot prisoners were required to leave the library between 6:00 and 7:00 for the evening meal.[1] (*Id.* at Ex. B ¶ 4; Dkt. No. 40 ¶ 2.)

On November 22, 2004, Plaintiff requested additional access to the facility's law library to prepare a court filing due on December 15, 2004. Defendants granted Plaintiff's request, and gave Plaintiff authorization to attend all four weekly 5:00-8:00 p.m. sessions, for a total of eight hours of library time each week. Even though Plaintiff's eight hours of authorized library time were above the six hour minimum requirement, Plaintiff also requested that he be permitted to use library books in his cell. Defendant Alexander advised that Plaintiff would be permitted the use of library materials in his cell if Plaintiff first used up all of the library time that he had been given.

To use the library hours that he had been given, Plaintiff was required to file a Law Library Research Session Request Form prior to each session he wanted to attend.

---

[1] Defendants' brief in support of summary judgment (Dkt. No. 26), and the R & R (Dkt. No. 38) fail to account for the alleged hour dinner break that interrupts the 5:00-8:00 p.m. time slot in determining the library time available to Plaintiff. Plaintiff objects to the R&R on this basis. However, for purposes of the Court's analysis, it does not matter whether Defendant had eight or twelve hours of library time available to him each week.

2

Defendants present sworn affadavit testimony that Plaintiff failed to submit Library Research Session Request Forms for, and did not attend, all four weekly evening library sessions during the three weeks he was given extra time, and for this reason he was not permitted to use library materials in his cell. (Dkt. No. 26, Ex. B ¶ 8, Ex. C ¶ 4.) Plaintiff presents sworn affadavit testimony that he did submit Library Research Session Request Forms for all four weekly evening library sessions during the three weeks he was given extra time, but he did not attend all four sessions each week because Defendant failed to schedule him on Thursday each week, and that Defendants were thus responsible for Plaintiff's failure to satisfy the prerequisite to in-cell use of library materials. (Dkt. No. 40, Pl.'s Aff. ¶ 8.)

The R & R found that Plaintiff had not shown that he requested four library sessions each week. (Dkt. No. 38, at 10.) Plaintiff objects to this finding as an improper determination that Defendants' affidavit testimony was more credible than Plaintiff's. (Dkt. No. 39, at ¶¶ 1a, 1b, 1c, 2, 3, 6, 8, 9, 11.) The Court agrees with Plaintiff's objection. A court may not grant summary judgment if the party opposing summary judgment, by affadavits or otherwise, sets out specific facts that show a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). In determining whether the party opposing summary judgment has satisfied this burden, "a court may not make determinations of witness credibility." *Shreve v. Jessamine County Fiscal Ct.*, 453 F.3d 681, 688 (6th Cir. 2006); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) ("Credibility determinations . . . are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed

verdict.") Because the parties present conflicting affadavits as to why Plaintiff did not attend all four evening library sessions each week, there is a genuine issue of material fact as to whether Plaintiff did not attend all four evening library sessions because he failed to file a Request Form, or because Defendants failed to put him on the schedule. Thus, the Court rejects the R & R's finding that Plaintiff failed to properly request a fourth law library session each week, and that he was denied the in-cell use of library materials for that reason.

However, even if Plaintiff was improperly denied in-cell access to library materials, to succeed in a claim under § 1983 Plaintiff must still show that there is a genuine issue of material fact as to whether the denial occurred in violation of his rights under the Constitution or United States statute. 42 U.S.C. § 1983. A mere denial of the in-cell use of library materials normally would not give rise to a constitutional claim. *See Ropoleski v. Rairigh*, 886 F. Supp. 1356, 1363 (W.D. Mich. 1995) ("[A]rbitrary administration in applying a facially neutral policy does not violate equal protection."). However, Plaintiff asserts that he was denied the in-cell use of library materials because he is an African-American, and that therefore he was deprived of his rights under the Fourteenth Amendment of the United States Constitution. A Fourteenth Amendment claim can arise when a facially race-neutral policy, such as the policy governing library material access, has been administered unequally, to the disadvantage of a particular racial group. *Id.* However, if unequal enforcement of a race neutral policy is alleged, discrimination will not be presumed. *Snowden v. Hughes*, 321 U.S. 1, 8 (1944). Plaintiff must present evidence to support a finding of purposeful

discrimination. *Charles v. Baesler*, 910 F.2d 1349, 1357 (6th Cir. 1990); *see also Ropoleski*, 886 F. Supp. at 1363 ("'Discriminatory purpose' implies that the decionmaker selected a course of action *because of* its detrimental effects on an identifiable group.") (emphasis in original).

Plaintiff presents to two pieces of evidence in support of his argument that Defendants administered the prison's library material access policy unequally to him because he is an African American. First, Plaintiff argues that, when he accused Defendant Alexander of administering the policy unequally on the basis of race, Defendant Alexander replied "take it any way you want." This response does not indicate that Defendant Alexander's decision was motivated by race. In no sense did Defendant Alexander admit that he was denying Plaintiff in-cell book access because he was an African American. Instead, this comment merely indicates that, in the face of Plaintiff's accusations, Defendant Alexander was indifferent as to whether Plaintiff believed that his actions were racially motivated.

Second, Plaintiff argues that because he was denied in-cell access to library materials and a caucasian prisoner, Jami Naturalite, was not, his denial was motivated by race. However, for the disparate treatment between Plaintiff and prisoner Naturalite to suggest racial discrimination against Plaintiff, Plaintiff must demonstrate that the two were otherwise similarily situated, and that there is no non-racial justification for the disparate treatment. *Ropoleski*, 886 F. Supp. at 1363 ("The Equal Protection Clause of the Fourteenth Amendment requires that persons *similarly situated* be treated alike.") (emphasis added).

5

The evidence indicates that Defendant and prisoner Naturalite were not similarly situated. Unlike Plaintiff, prisoner Naturalite's work and yard schedule did not permit Naturalite to attend the minimum six hours of library time required per week. Although Plaintiff's affadavit suggests that Plaintiff observed Naturalite in the law library "usually four (4) times weekly," Defendants present a work permit indicating that over the relevant period prisoner Naturalite worked every Monday through Friday from 2:00-9:00 p.m. as a porter in the Brooks Center Building. (Dkt. No. 26, Ex. B.) In light of this evidence, no reasonable jury could conclude that prisoner Naturalite was able to attend any of the afternoon or evening law library sessions. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In addition, Defendant Kero's uncontradicted sworn statement indicates that prisoner Naturalite's yard time was scheduled from 8:30-10:30 a.m each day, the same time slot as the only other available law library session. (Dkt. No. 26, Ex. B.) Because prison policy permitted only two of the minimum six hours to overlap with a prisoner's yard time, prisoner Naturalite's work schedule permitted only two hours of library time each week, one-third of the minimum amount of law library time required by prison policy. It appears that Defendants provided Naturalite with in-cell access to library books to accommodate this special situation, and not because he is Caucasian. Thus, even if Plaintiff was the victim of an arbitrary, or even an unfair, application of the in-cell library material policy, Plaintiff has not demonstrated that the application of that policy was racially motivated.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's objections to the Magistrate Judge's Report and Recommendation (Dkt. No. 39), are **GRANTED IN PART** and **DENIED IN PART**. To the extent Plaintiff objects to the magistrate's finding that Plaintiff was at fault for failing to satisfy the condition precedent to his in-cell use of library materials, the objection is **GRANTED**. To the extent Plaintiff objects to the other findings in the report and recommendation, the objections are **DENIED**.

**IT IS FURTHER ORDERED** that the Report and Recommendation (Dkt. No. 38) is **REJECTED IN PART** and **APPROVED IN PART**. To the extent the Report and Recommendation found that Plaintiff was at fault for failing to satisfy the condition precedent to his in-cell use of library materials, the report and recommendation is **REJECTED**. In all other respects, the Report and Recommendation is **APPROVED**.

**IT IS FURTHER ORDERED** that, to the extent the Report and Recommendation is approved, the Report and Recommendation is **ADOPTED** as the opinion of this Court.

**IT IS FURTHER ORDERED** that the motion for summary judgment filed by Defendants Kero and Alexander (Dkt. No. 25) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claim under 42 U.S.C. § 1983 against Defendants Kero and Alexander (Dkt. No. 1) is **DISMISSED** in its entirety.

A judgment consistent with this memorandum opinion and order will be entered.

Dated: December 1, 2009  /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE